<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERIC INSELBERG,**<br><br>              **Plaintiff,**<br>v.<br><br>**NEW YORK FOOTBALL GIANTS, INC., JOHN K. MARA, WILLIAM J. HELLER, CHRISTINE PROCOPS, EDWARD WAGNER, JR., JOSEPH SKIBA, EDWARD SKIBA, ELI MANNING, BARRY BARONE, PARK CLEANERS, INC., and JOHN DOES A-Z,**<br><br>              **Defendants.** | Civil Action No.: 14-1317 (WJM)<br><br><br><u>**REPORT & RECOMMENDATION**</u> |

**<u>FALK U.S.M.J.</u>**

      Before the Court is Plaintiff's motion to remand this case to state court. [CM/ECF No. 25.] The motion is opposed. Oral argument was held on May 16, 2014. For the reasons set forth below, it is respectfully recommended that Plaintiff's motion be **DENIED**.

<u>**INTRODUCTION**</u>

      Plaintiff, a self-described inventor and sports memorabilia dealer, has filed a wide-ranging complaint against the New York Football Giants, quarterback Eli Manning, co-owner John K. Mara and other Giants employees and defendants. (Compl., ¶ 1.) The Complaint, filed in state court, has two conceptual parts. Most of the Complaint alleges improprieties against the Defendants including

racketeering, perjury, trade libel and more regarding alleged fraudulent Giants memorabilia, which caused Plaintiff to suffer damages. The memorabilia claims are purely state law claims.

The other part of the Complaint alleges that the Giants inappropriately used patented intellectual property invented by Mr. Inselberg relating to technology for wireless audience interaction at football games. Defendants removed the case to federal court based on Plaintiff's claims regarding his patented inventions.

Plaintiff then moved to remand the case, arguing that his patent-related claims were pleaded only under state law. Apparently, Plaintiff is no longer the owner of the patents he obtained and he states that he lacks standing to assert traditional patent infringement claims. (Pl.'s Br. 8.) Nevertheless, Plaintiff attempts to bring these patent-related claims under obscure New Jersey common law relating to misappropriation of trade secrets and unjust enrichment.

Plaintiff's purported state law "patented concepts" claims are really patent claims, no matter what they are called. Patent claims are quintessentially federal, creating model federal jurisdiction. But not only are patent claims federal, they are <u>exclusively</u> federal, and can <u>only</u> be brought in federal court. In patent matters, Congress has so completely preempted the field that any attempt to disguise them as state law claims cannot defeat federal jurisdiction. Thus, the motion to remand should be denied.

These jurisdictional concepts, which have, on occasion, been described as "confusing," will be fully addressed herein.

## BACKGROUND

**A.    Fraudulent Memorabilia Related Claims**

This case arises out of a Government investigation into fraud in the sports memorabilia

business that focused on Plaintiff, Eric Inselberg, and employees of the New York Football Giants.

In addition to the Giants, Eli Manning (Giants quarterback), and John K. Mara (the President, CEO, and co-owner of the Giants), the other defendants are: William J. Heller, Esq. (Giants General Counsel); Christine Procops (Giants Senior Vice President and CFO); Ed Wagner, Jr., Joseph Skiba and Edward Skiba (Giants equipment managers); Park Cleaners Inc. (a dry cleaners in Rutherford, New Jersey); and Barry Barone (owner and operator of Park Cleaners) (collectively referred to as "Defendants") (Compl., ¶¶ 2-11.)

In or about 2006, the United States Attorney's Office for the Northern District of Illinois, in connection with the FBI, commenced a criminal investigation into fraud in the sports memorabilia business. (Compl., ¶ 57.)

In 2008, the Government focused on Inselberg as part of its investigation after it learned that he "may have sold game-issued or authentic jerseys to other memorabilia traders that were ultimately sold—fraudulently—as game-worn." (Compl., ¶ 58.) During the course of the FBI investigation, some Giants employees gave statements to FBI agents and testified under oath before a grand jury in Illinois, in which they allegedly downplayed the Giants' relationship to Inselberg and the amount of memorabilia he obtained from the team. (Compl., ¶¶ 60, 62-118.)

Inselberg was eventually indicted in Illinois for mail fraud, specifically that he had "misrepresented unused jerseys as game-worn or game used in order to obtain higher prices for the merchandise." (Compl., ¶ 136.) Inselberg says the indictment was the result of Giants employees giving false testimony. (Compl., ¶ 62.) The indictment against Inselberg was dismissed on May 2, 2013, at the request of the U.S. Attorney's Office. (Compl., ¶ 146.)

On January 29, 2014, Plaintiff filed a 16-count Complaint in New Jersey Superior Court.

Inselberg contends, *inter alia*, that false testimony led to his indictment and ruined him personally and financially. Inselberg also alleges that Defendants were involved in game-used memorabilia fraud which ultimately damaged his reputation and business. (Compl., ¶¶ 119-121.)

Plaintiff's Complaint asserts the following sixteen causes of action, all under state law: (1) New Jersey's Civil Racketeering Statute, N.J.S.A. 2C:41-1, *et seq.*; (2) Tortious Interference with Prospective Economic Advantage; (3) Tortious Interference with Contractual Relations; (4) Malicious Prosecution; (5) Abuse of Process; (6) Trade Libel; (7) Intentional Infliction of Emotional Distress; (8) Unjust Enrichment; (9) Quantum Meruit; (10) Unfair Competition – Idea Misappropriation; (11) Breach of Contract; (12) Civil Conspiracy; (13) Aiding & Abetting; (14) Negligent Supervision; (15) Negligent Retention; and (16) Respondeat Superior.

**B.     The Patent Issues**

Inselberg was not just involved in the sports memorabilia business. He is also an inventor involved in the development and marketing of technology for wireless audience interaction at live events, such as football games. (Compl., ¶¶ 32-35; Pl.'s Br. 4.) Plaintiff eventually amassed more than twenty (20) "wireless-related patents" covering his inventions, and indeed, a list of the patents is attached as an exhibit to the Complaint. (Compl., Ex. A.)

Apparently while the Government's sports memorabilia fraud investigation was proceeding, Inselberg met with the Giants to promote his patented technology. (See generally Compl., ¶¶ 233-35.) At around the same time, Inselberg entered into a loan agreement with Frank Bisignano, who was then the Co-Chief Operating Officer for JP Morgan Chase and CEO of Mortgage Banking for

JP Morgan Chase.  This loan was collateralized by, *inter alia*, Inselberg Interactive's patents.[1]

The Complaint alleges that the allegedly improper indictment, and other wrongful conduct by the Giants, caused Inselberg's patent business to collapse and caused him to default on the Bisignano loan and lose ownership of his collateral—the wireless patents, which are now owned by Bisignano.  All agree that Plaintiff's allegations relating to the loss of his patents are purely state law claims that do not support federal jurisdiction.

The Complaint also includes two very different types of claims related to patents.  These are set forth in Count 8, entitled "Unjust Enrichment," and Count 10, termed "Unfair Competition–Idea Misappropriation."  Counts 8 and 10 are based on Plaintiff's allegation that Defendants wrongly "misappropriated" and "used" Inselberg's wireless patented marketing concepts and "integrated" them into the Giants' wireless platforms. (Compl., ¶¶ 233-35.)

Defendants removed this case to Federal Court on February 27, 2014, based on the allegation that Plaintiff has, in Counts 8 and 10, "asserted claims under the Patent Act" and therefore, that there is federal jurisdiction under 28 U.S.C. §§ 1331 and 1338.  Defendants' arguments are: (1) that, on their face, Counts 8 and 10 are literally patent infringement claims arising under federal law; (2) to the extent Plaintiff hasn't straightforwardly pleaded patent claims, he has "artfully pleaded" them to appear as state law claims, and any attempt to do so cannot work since Congress has completely preempted patent infringement claims; and (3) that even if Counts 8 and 10 find their origins in state law, they nevertheless give rise to federal jurisdiction because they raise embedded federal patent

---

[1] Plaintiff once owned the patents, but he transferred ownership to a separate entity dedicated to Inselberg's patent activities, Inselberg Interactive, LLC, in which he held an ownership interest of between 82.5% and 87.5% at all relevant times.  (Pl.'s Br. 4.)  This transfer occurred in 2010, apparently before many of the events giving rise to this case.

issues, providing for federal jurisdiction under relevant Supreme Court authority.

## APPLICABLE LAW

A.  **Removal Generally**

The federal removal statute provides that "[e]xcept as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007). Removal is strictly construed and all doubts are resolved in favor of remand. See Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).

B.  **Federal Question Jurisdiction**

Federal courts have original jurisdiction over cases that "arise under" federal law. See 28 U.S.C. § 1331, 1441(a). Because Defendants bear the burden of establishing federal question jurisdiction, they must demonstrate that one of Plaintiff's claims—in particular Count 8 or 10—arise under federal law. Whether federal question jurisdiction exists is determined solely by examining the plaintiff's "well-pleaded complaint." Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 808 (1986); see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vac. Tr. for S. Cal., 463 U.S. 1, 9 (1983).

Pursuant to what is referred to as the "well-pleaded complaint rule," a plaintiff is the "master of his complaint" and ordinarily entitled to remain in state court so long as the complaint does not

allege a federal claim on its face. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987).[2] There are basically three ways that a case can "arise under" federal law. In practice it is not so simple.

First, a case "arises under" federal law when federal law expressly creates the cause of action asserted. See Franchise Tax Bd., 463 U.S. at 9. For example, Congress has authorized federal district courts to exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331, and, more particularly, over any civil action arising under any Act of Congress relating to patents, § 1338(a)." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). Moreover, for cases falling within the "patent-specific arising under jurisdiction of §

---

[2] The "well-pleaded" complaint rule is shrouded in confusion and criticism. Some consider the rule "poorly named" and subject to different interpretations—even within the same treatise. Compare 13D C. Wright, et al., Federal Practice & Procedure § 3566 ("The well-pleaded complaint rule is poorly named. Despite the implication, it has nothing to do with whether the plaintiff's lawyer drafts pleadings well. Rather, a well-pleaded complaint is one that would state only a claim. Often, complaints range much farther afield. It is not uncommon for a plaintiff to allege not only the claim but to anticipate and rebut a defense or to plead something else irrelevant to the claim itself. The well-pleaded complaint rule stands for the proposition that the court, in determining whether the case arises under federal law, will look only to the claim itself and ignore any extraneous material.") with § 3722 ("well-pleaded" means "pleaded in conformity with the rules of pleading"). Others have criticized operation of the rule and its gate-keeping function in assessing federal jurisdiction. See, e.g., First Fed. Sav. & Loan Ass'n of Harrison v. Anderson, 681 F.2d 528, 532 n.8 (8th Cir. 1982) ("Some commentators have criticized the well-pleaded complaint rule as unnecessarily and impractically restricting the business of federal courts." (citations omitted)); Penobscot Nation v. Georgia-Pacific Corp., 116 F. Supp. 2d 201, 205 (D. Me. 2000) ("The well-pleaded complaint rule exists. It has been criticized by the commentators . . . but until it is overruled, I simply apply it." (citations omitted)); Arthur R. Miller, Artful Pleading: A Doctrine in Search of Definition, 76 Tex. L. Rev. 1781 (1998) ("[C]ourts also have come to recognize the shortcomings of the well-pleaded complaint rule as a sorting device for the exercise of federal question jurisdiction because its bright-line character prevents any discrimination among cases. Thus, rather than always acquiescing in the plaintiff's characterization of his or her complaint as advancing only a state cause of action to negate removal jurisdiction or always allowing the mere mention of a federal issue by the plaintiff to support federal question jurisdiction, federal courts have been willing to look beyond the pleading and inquire into the true substantive nature of the complaint in certain circumstances--occasionally invoking the "artful pleading" imagery.").

1338(a) . . . Congress has not only provided for federal jurisdiction but also eliminated state jurisdiction, decreeing that "[n]o state court shall have jurisdiction over any Act of Congress relating to patents." Gunn, 133 S. Ct. at 1064 (citing § 1338); see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09 (1988).

Second, "arising under" jurisdiction can be established by the doctrine of "complete preemption," which is sometimes referred to as "artful pleading." Complete preemption has been described as an "exception" to the well-pleaded complaint doctrine that "creates removal jurisdiction even though no federal question appears on the face of the plaintiff's complaint." Goepel v. Nat'l Postal Mail Handlers, 36 F.3d 306, 310 (3d Cir. 1994); Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000) ("One exception to [the well-pleaded complaint rule] is for matters that Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character."). The gist of the complete preemption principle is that "[a] complaint purporting to rest on state law . . . can be re-characterized as one arising under federal law if the law governing the complaint is exclusively federal. Under this . . . complete preemption doctrine, a state law cause of action may be recast as a federal claim for relief making its removal by the defendant proper on the basis of federal question jurisdiction." Vaden v. Discover Bank, 556 U.S. 49, 62 (2009) (internal cites and quotes and alterations omitted). Stated differently, "[t]he complete preemption doctrine holds that "Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." Goepel, 36 F.3d at 306 (citing Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co., 858 F.2d 936, 939 (3d Cir. 1988)). "In such cases, 'any complaint that comes within the scope of the federal cause of action [created by the federal statute] necessarily arises under federal law . . . for purposes of removal based

on federal question jurisdiction." Id.[3]

Complete preemption generally arises in the context of purely federal areas of law, such as state claims barred by the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132, *et seq*., or the Labor Relations Management Act (LMRA), 29 U.S.C. § 185(a). See, e.g., Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) (ERISA completely displaces common law contract and tort claims brought by ERISA plan beneficiary); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968) (LMRA displaces state law cause of action for breach of contract between employer and a labor organization).

The third and final category of "arising under" cases are casually referred to as "Grable" cases based on the Supreme Court's important opinion in Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005). A Grable case involves the pleading of a state law claim that contains a substantial, embedded question of federal law. Gunn, 133 S. Ct. at 1065 (citing Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)) ("Even where a claim find its origins in state rather than federal law . . . we have identified a special and small category

---

[3] The Third Circuit has stated that "the same principle [as complete preemption] has been referred to elsewhere as the 'artful pleading' doctrine, under which a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state claim." Goepel, 36 F.3d at 310 n.5; see also Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state law claim."); Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 ("As one treatise puts it, courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum . . . and occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of Plaintiff's characterization." (citing 14 C. Wright, et al., Federal Practice & Procedure § 3722))). Of note, some courts consider the doctrine of "complete preemption" *separate* from that of "artful pleading" and independent grounds for federal question jurisdiction. See, e.g., In re Wireless Tele. Radio Frequency Emissions Prod. Liab. Litig., 216 F. Supp. 2d 474, 492-93 (D. Md. 2002), reversed on other grounds by, Pinney v. Nokia, Inc., 402 F.3d 430 (4th Cir. 2005).

of cases in which arising jurisdiction still lies.")). In Grable, the Supreme Court held that federal jurisdiction over a state law claim will lie if the state law claim contains a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 133 S. Ct. at 1065 (citing Grable, 545 U.S. at 314).

## DISCUSSION

The concept of federal question removal jurisdiction is a deceptively complicated area of the law, described by United States Chief Justice John Roberts as a "canvas [that] looks like one that Jackson Pollock got to first." Gunn, 133 S. Ct. at 1065.[4] Throughout briefing and oral argument, Defendants have asserted federal jurisdiction on all three of the theories described above. However, their primary argument is that Plaintiff's state law claims, which are based on patents, are really mislabeled patent infringement claims and thus completely preempted.[5] The argument goes that regardless of how the claims are labeled, Plaintiff is alleging that patents are being infringed and the

---

[4] As Chief Justice Roberts states, federal question jurisdiction has, in fact, vexed the courts for decades. See, e.g., Gunn, 133 S. Ct. at 1064-65 (citing 13D C. Wright, et al., Federal Practice and Procedure § 3562 at pp.175-76 (3d ed. 2008) (Federal question jurisdiction "has attracted the attention of such giants of the bench as Marshall, Waite, Bradley, the first Harlan, Holmes, Cardozo, Frankfurter, and Brennan. [And] it has been the subject of voluminous scholarly writing. Despite this significant attention, however, no single rationalizing principle will explain all of the decisions . . . .")); see also Speciale v. Seybold, 147 F.3d 612, 615 (7th Cir. 1998) ("Although the "complete preemption" doctrine has become fully accepted, confusion remains because the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine." (quotation omitted)).

[5] Defendants' brief refers to embedded federal question jurisdiction in Grable as the "centerpiece" of their argument. (Defs.' Br. 6.) However, at oral argument, Defense counsel made clear that the focus of their argument is actually on the doctrine of complete preemption. (Transcript of Oral Argument, dated May 16, 2014 ("Tr.") at 47:10-25.)

only way to seek redress is a patent infringement claim in federal court.

Plaintiff disagrees, primarily taking the position that any preemption issues that arise are defensive in nature and more appropriately addressed in the context of a motion to dismiss. He also states that he does not own the patents referenced in the Complaint and concedes that he lacks standing to assert patent infringement claims.

**A.      There is Federal Question Jurisdiction Here**

The Court concludes that federal arising under jurisdiction exists here and the case was properly removed. The Complaint alleges misappropriation and unauthorized use of patented technology and concepts. These claims are completely preempted by federal patent law.

**1.      Counts 8 and 10 of the Complaint**

Since the jurisdictional analysis starts with the "well-pleaded" complaint, it merits a look at what Plaintiff has actually pleaded in Counts 8 and 10:

**COUNT EIGHT**
**(Quasi-Contract - Unjust Enrichment)**

. . .

222.   This Count Eight is against Defendant New York Football Giants for its breach of quasi-contract and unjust enrichment.

223.   <u>The Giants misappropriation of Inselberg's wireless patent and marketing concepts and integration of them into the Giants wireless platforms</u> . . . conferred financial benefit upon Defendants.

224.   Defendant has failed to compensate Inselberg for the benefits it has received, resulting in Defendants' unjust enrichment at Inselberg's expense.

**COUNT TEN**
**(Unfair Competition – Misappropriation)**

. . .

233.   The Giants have engaged in unfair competition and

-11-

    misappropriation in violation of New Jersey common law by knowingly, willfully, maliciously, recklessly and/or negligently:

    a. Engaging in "reverse palming off" emanating from <u>the Giants absolute failure to appropriately credit Inselberg for the use of Insleberg's patented wireless marketing concepts and integration of them into the Giants' wireless platforms</u>;

    b. Further engaging in "reverse palming off" emanating from the Giants' deceitful omission from the public <u>that Inselberg's patented wireless marketing concepts used and integrated into the Giants' wireless platforms were the work of Plaintiff</u>;

    c. Falsely designating the origin of Inselberg's patented wireless marketing concepts used and integrated into the Giants' wireless platforms in such a manner that the Giants have created a deception as well as confusion concerning the origin of said wireless patent concepts;

    d. Violating Inselberg's generally recognize right not to have his ideas, skills, efforts, contributions, time, and labor, misappropriated by another.

  234. <u>Inselberg's patented wireless marketing concepts used and integrated into the Giants' wireless platforms are novel and worthy of protection on grounds that said concepts are both innovative and original</u>.

  235. <u>Inselberg's patented wireless marketing concepts used and integrated into the Giants' wireless platforms were presented in confidence to the Giants, who understood them to be for sale, and were adopted and made use of by the Giants in connection with their own activities without compensation to Inselberg, either directly or indirectly</u>.

  236. As a result of Defendant's unfair competition and misappropriation, Plaintiff has been damaged thereby.

(Compl., ¶¶ 222-236) (emphases added).

## 2. <u>The Complaint Arguably Alleges a Patent Claim on its Face</u>

Defendants argue the Complaint alleges a patent infringement claim on its face. (Defs.' Br. 9.) Plaintiff maintains that he pleaded pure state law claims for unjust enrichment and

misappropriation. Defendants' argument is credible, although not entirely persuasive. The Complaint does allege that the Giants misappropriated Plaintiff's patented inventions and used them without permission or compensation. The concepts are repeatedly referred to as "patented." Is that directly alleging a patent infringement claim? No definitive answer was found in precedent.

Conversely, there is no citation or reference to the Patent Act. The word infringement is not used. While there are no magic words needed to allege a patent claim, these counts don't look like most of the other patent complaints we have seen. Although the Court believes this is, in fact, a patent claim, finding it conspicuously alleged on the face of the Complaint is a stretch. This is why the Court's decision is more aptly premised on the "artful pleading" complete preemption route to federal jurisdiction.

**3.      Plaintiff's Professed State Law Claims are Really "Artfully Pleaded" Patent Claims**

If not expressly pleaded, patent infringement is certainly the essence of the claims. Though the Plaintiff is the master of his Complaint, that mastery is not unlimited. An inventor alleging injury from unauthorized use of a patented invention is tantamount to a patent infringement claim, no matter how pleaded. Plaintiff alleges that Defendants "misappropriat[ed] Insleberg's patented wireless concepts and integrat[ed] them into the Giants wireless platforms." (Compl., ¶ 223.) "Artfully" omitting words like "infringement" and substituting a synonym like "misappropriate" does not change the nature of the claim.[6]

**4.      Patent Claims Are Exclusively Federal**

Having found that the Complaint alleges patent infringement, the complete preemption

---

[6] Misappropriate is a direct synonym of steal which is a direct synonym of infringe. See Roget's 21st Century Thesaurus at pp. 468, 551 (1992).

doctrine sweeps these claims into federal court. See Goepel, 36 F.3d at 306. Patent infringement exists solely by federal statute. See 35 U.S.C. § 271. In addition, there is no clearer Congressional intention of federal court exclusivity than 28 U.S.C. § 1338. Section 1338 is a separate jurisdictional statute governing only patents, and it expressly authorizes patent infringement suits in federal court while simultaneously taking the unusual step of divesting state courts of jurisdiction over such claims. In fact, patent claims are perhaps more federal than most any other claims, since many other federal claims, e.g., civil rights claims, are permitted to proceed in state court. Cf. Bonito Boats v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989) (emphasizing federal nature of patent system). Patent infringement claims can only be brought in federal court. This is bright line complete preemption. See Goepel, 36 F.3d at 306. [7]

**5.      Patent Claims May Not Be Brought Under State Law**

Permitting patent infringement claims to be brought under state common law concepts, by persons without standing, would undermine the federal patent framework. Patents are special. The defining hallmark of a patent is exclusivity. Once something is patented, the holder of the patent has exclusive right to use it — and to enforce it. The holder of the patent has the exclusive right to sue for the unauthorized use of intellectual property (i.e., the infringement). And pursuant to statute, the federal court has exclusive jurisdiction over the case.

---

[7] Following passage of the Leahy-Smith America Invents Act, Pub. Law No. 112-29, compulsory patent *counterclaims* can serve as the basis to remove an entire case to federal court. See 28 U.S.C. § 1454(a) ("A civil action in which *any* party asserts a claim for relief arising under any Act of Congress relating to patents . . . may be removed to the district court."); see also Joe Matal, A Guide to the Legislative History of the America Invents Act: Part II of II, 21 Fed. Cir. B.J. 539 (2012). No such exception exists for counterclaims related to other federal laws like ERISA and the LMRA. This unique patent-related exception to the well-pleaded complaint rule emphasizes how strongly Congress considers all patent issues exclusively federal.

To accept Plaintiff's premise – that the person who conceived of an idea retains the right to sue for misappropriation of it, <u>after</u> it was patented and he no longer holds the patent, would destroy the value of the patent and threaten the patent system. Why go to the trouble and expense of obtaining a patent if you don't get exclusivity? What of the patent holder's rights? Mr. Frank Bisignano supposedly owns the patents in this case. Can he also sue the Giants? Allowing a non-patent holder to sue for infringement under state common law would obliterate the patent holder's exclusivity and cannot be reconciled with exclusive federal patent jurisdiction.

When Plaintiff elected to patent his ideas and concepts, he forfeited the right to enforce them under state common law. It is the *quid pro quo* for patent protection. This has been unequivocally confirmed by both the Federal and Third Circuits:

> **A claim for unfair competition based on acquisition and conversion of a trade secret could only arise prior to the issuance of a patent. After the issuance of a patent such a claim for unfair competition would be inconsistent since the grant of the patent is a public disclosure not only of the process defined in the claims but also of any trade secrets described in the specifications.**

<u>O'Brien v. Westinghouse Elec. Corp.</u>, 293 F.2d 1, 13 (3d Cir. 1961) (emphasis added)

> **[Plaintiff] cannot claim that [Defendant's] activities following the issuance of the '143 patent constituted misappropriation of confidential information unless the activities related to information not disclosed in the patent.**

<u>On-Line Technologies v. Bodenseewerk</u>, 386 F.3d 1133, 1141 (Fed. Cir. 2004) (emphasis added). At oral argument, Plaintiff's counsel conceded that his misappropriation claim covers concepts and ideas that are <u>patented</u>. (<u>See</u> Tr. 20:5-9.)

Based on the above, it would seem impossible for Plaintiff to proceed with common law claims based on the misappropriation of anything that has been patented. Yet, Plaintiff admits that's

exactly what he is doing. (Tr. 20:5-9.) Plaintiff's retort is that such arguments are merely "defensive" arguments and should be raised in a motion to dismiss the claims, not used to re-characterize the common law claims he has supposedly pleaded.[8] But, Plaintiff's argument ignores the Court's responsibility to evaluate the "well-pleaded complaint" and determine not what Plaintiff *claims* to have pleaded, but what he has *actually* pleaded. One court has described this gate-keeping function as follows:

> The role of the Federal District Court in considering the propriety of removal is always to look to the essence or real nature of the claim asserted in the complaint to ascertain whether it involves a federal question, regardless of whether it is so characterized. In this regard, courts have proposed for themselves a hypothetical and ideal complaint that presents only the well-pleaded facts on its face and have restricted their consideration to its claims. Neither artful or inartful pleading, nor inadvertence, mistake, or fraud can keep the Federal Courts from their appointed task of reaching the real nature of the claim asserted in plaintiff's complaint and uncovering any lurking federal question.

Ashley v. Sw. Bell Tele., 410 F. Supp. 1389, 1392 (W.D. Tex. 1976).

**6.    Grable Jurisdiction, While Tenable, Has Not Been Established**

As previously described, Grable jurisdiction is narrow and only employed when a purely state law claim includes an embedded federal issue that is actually disputed and substantial. See Grable, 545 U.S. at 314. Defendants partially base their removal on asserted Grable jurisdiction. Specifically, they assert four purported embedded federal issues. (Defs.' Br. 7.) The most plausible is that it is "for this Court to determine the extent of patent infringement claims included in Counts

---

[8] Defensive preemption is "a loose concept used variously by the courts to refer to certain defenses to a claim, of which a classic example is a state claim foreclosed because its assertion conflicts with a federal statute or falls within a field preempted by federal law." Cavallaro v. UMASS Mem'l Healthcare, Inc., 678 F.3d 1, 5 n.3 (1st Cir. 2012).

8 and 10 and whether there is anything left over under state law." (Defs.' Br. 7.) It is quite possible that deciding the contours of the patented concepts at issue would be necessary to determine the extent to which Plaintiff would have a viable state law misappropriation claim for <u>non</u>-patented concepts. But, Plaintiff's Complaint (and his concession at oral argument) demonstrate he is suing for the use of his patented concepts. Further, the <u>Grable</u> argument is not fleshed out. Therefore, no speculative consideration of <u>Grable</u> jurisdiction is required. This is especially so in light of the Supreme Court's Opinion in <u>Gunn</u>, in which the Court concluded that <u>Grable</u> requires a truly substantial issue of federal law, even if patents are collaterally part of the mix.

**7.     <u>Plaintiff's Arguments Are Unavailing</u>**

Plaintiff cites a variety of state and federal cases in an effort to avoid preemption. All of Plaintiff's cases and arguments are thoroughly distinguishable. The parties have cited no cases factually analogous to this case and conceded at argument that none could be found. A simple example illustrates the difference. There are cases in which A, an inventor, has an idea and approaches B, confidentially, for help in developing the idea. B then misappropriates the idea and secures a patent for the invention.[9] Some cases suggest A may have a state law action against B for misappropriation of A's secret idea. That is much different from this case.

No one has cited a case allowing a state law cause of action when A has an idea and has it patented, then contacts B about his patent, and then B steals (i.e., infringes) the patent and uses the

---

[9] For example, Plaintiff's citation to <u>Kleinerman v. Snitzer</u>, 754 F. Supp. 1 (D. Mass. 1990) is not helpful because in that case the plaintiff claimed he disclosed information to the defendants and the *defendants* then secured patents over the information. <u>Id.</u> at 3. By contrast, here, Plaintiff had patents, disclosed the information in the patents to the Giants, then lost possession of the patents, and despite having lost ownership of the patents, sued for misappropriation of information contained with patents, which are owned by an individual who is not a party to the case.

patented idea without authority. That is effectively an infringement complaint which cannot proceed in state court. And that is essentially this case.

Plaintiff's cases can also be summarily distinguished on other grounds.

One, it is not material that there are generally recognized state law causes of action for misappropriation and unjust enrichment. Breach of contract is also a recognized common law claim. But, as the Supreme Court noted in Metro. Life Ins., breach of contract claims under common law *are* preempted when the claim is being brought by a ERISA plan beneficiary against a plan provider, see Metro. Life Ins., 481 U.S. at 63. Similarly "breach of contract" claims are preempted when they are brought by a labor union against an employer and there is a collectively bargained agreement involved. See Avco Corp., 390 U.S. at 557. It is not the *existence* of the common law cause of action that matters, but the *circumstances* in which the cause of action is being asserted. Applying that logic here, it does not much matter that unjust enrichment and idea misappropriation are legitimate New Jersey causes of action. Like the breach of contract claims in Met Life Ins. and Avco, Plaintiff's claims are displaced when they are really artfully alleging patent infringement, an exclusively federal claim.

Two, Plaintiff's Grable related arguments are not relevant because the Court has not decided the case on that basis.

Three, Plaintiff contends that any preemption issues that arise are *defensive* in nature. That is, that defensive or conflict preemption may result in the dismissal of Plaintiff's claims, but that must be done through a motion to dismiss in state court. This argument fails to acknowledge the function of the Court in interpreting the "well-pleaded complaint," which discloses that this case involves complete preemption.

Four, Plaintiff repeatedly states that he lacks standing to bring patent infringement claims, and that if Count 8 or 10 are found to be patent infringement claims, they would be subject to immediate dismissal. (<u>See, e.g.</u>, Pl.'s Reply Br. 5; Tr: 33:8-13; 69:17-24.) Litigants commonly plead claims they lack standing to bring. That Plaintiff's patent claims may ultimately fail for lack of standing does not deprive the federal court of jurisdiction until they do. Moreover, if Plaintiff owned the patents and thus had standing, is there really any doubt that he would have pleaded infringement more clearly?

## <u>CONCLUSION</u>

The Court finds that Count 8 (Unjust Enrichment) and Count 10 (Unfair Competition-Misappropriation) are completely preempted by federal patent law. Therefore, Defendants' removal of the case to federal court was proper. For these reasons, it is respectfully recommended that Plaintiff's motion to remand should be **DENIED**.

s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**

**DATED: June 18, 2014**